# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| GAYLE D. HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 3892 |
| | ) | |
| | ) | |
| BOARD OF EDUCATION OF THE | ) | |
| CITY OF CHICAGO ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion to dismiss. For the reasons stated below, we grant the motion in part and deny the motion in part as moot.

## BACKGROUND

Plaintiff Gayle D. Harris ("Harris") alleges that she worked for the Chicago Public Schools ("CPS") and that she was promoted to a permanent position as a payroll clerk in the late summer 2002. Harris claims that in early March 2003, she started to ask questions regarding individuals that she thought were overpaid by the CPS and she stated that she objected to the overpayments. Harris claims that on

March 19, 2003, she received a "harassing email" from her supervisor. (Compl. Par. 12). Harris alleges that on April 1, 2003, she was "further harassed further [sic] via email." (Compl. Par. 12). According to Harris she subsequently asked her supervisor about certain payroll practices and thereafter Harris was "again harassed via email." (Compl. Par. 13). Harris claims that afterwards she "was informed" that her manager was attempting to fire her because the "manager felt that [Harris] was not loyal." (Compl. 14). Harris further claims that, around this time, she expressed her disapproval of a variety of other conduct by the various employees working for the CPS. Harris claims that she was singled out because of her complaints about the conduct of the CPS employees and was given the "silent treatment" at work. (Compl. Par. 16). On June 30, 2004, the CPS terminated Harris' employment, indicating that the reason for the termination was that workers needed to be laid off in order to reduce the workforce and meet budgetary constraints. Harris brought the instant action in Illinois state court and includes in her complaint a claim alleging a retaliatory discharge in violation of 42 U.S.C. § 1983 ("Section 1983") (Count I), a state law retaliatory discharge claim (Count II), a claim brought pursuant to the Illinois Whistleblower Protection Act, Act, 5 ILCS 395/1, (Count III), an intentional of infliction of emotional distress claim (Count IV), and a Section 1983 due process and equal protection claim (Count V). This action was subsequently removed to federal court.

## LEGAL STANDARD

In ruling on a motion to dismiss, brought pursuant to Federal Rule of Civil Procedure 12(b)(6) the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *See also Baker v. Kingsley*, 387 F.3d 649, 664 (7th Cir. 2004)(stating that although the "plaintiffs' allegations provide[d] little detail. . . [the court could not] say at [that] early stage in the litigation that plaintiffs [could] prove no set of facts in support of their claim that would entitle them to relief"). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School*, 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). Under current federal notice pleading standard a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action. . . .'" *See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent

with the complaint" and that "[m]atching facts against legal elements comes later."). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carter*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," *Id.*, and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims." *Perkins*, 939 F.2d at 466-67. The Seventh Circuit has explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251.

## DISCUSSION

I. Section 1983 Claims Against Duncan and Juarez

Defendants argue that the complaint fails to allege any personal involvement by Defendant Arne Duncan ("Duncan") or Defendant Ascencion Juarez ("Juarez") in the alleged constitutional deprivations. The Seventh Circuit has made it clear that "[t]he doctrine of *respondeat superior* does not apply to § 1983 actions. . . ." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Thus, an individual cannot be held liable under Section 1983 in his individual capacity unless he "participated directly in the constitutional violation." *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir.2003)(stating that "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability

does not attach unless the individual defendant caused or participated in a constitutional deprivation"). For a supervisor to be held liable under Section 1983 for acting in his supervisory role, a plaintiff must show that the supervisor directed the constitutional deprivation or that it occurred with his "knowledge and consent." *Id.* (indicating that a plaintiff must show that the supervisor knew "about the conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye").

In the instant action, the complaint provides that Duncan is the Chief Executive Officer of the CPS and that Juarez is the Chief Human Resources Officer of the CPS. (Compl. Par. 2). However, there are not any specific allegations in the complaint of misconduct on the part of Duncan or Juarez. In fact, other than the initial reference in the complaint to Duncan and Juarez and the mention of their job titles, they are not mentioned at all in the complaint. Harris specifically alleges in the complaint that her "supervisor" harassed her, (Compl. Par. 12), but Harris identifies her supervisor as Defendant Nancy Slavin ("Slavin"). (Compl. Par. 2). Harris also alleges that she was told that her "manager" was trying to get her fired, (Compl. Par. 14), but Harris also refers to Slavin as her manager. (Compl. Par. 4, 7).

Harris, recognizing the lack of allegations concerning personal involvement by Duncan and Juarez, argues that it is "certainly a fair inference" that Duncan and Juarez were involved in the budget layoffs. (Ans. 5). However, such an inference in the absence of other evidence is not reasonable. Harris cannot attribute personal involvement in the alleged constitutional violations to Duncan and Juarez simply

5

because of their titles. *See Alexander v. Sheahan*, 1995 WL 573632, at *1 (N.D. Ill. 1995)(stating that the plaintiff's Section 1983 claim was improperly based upon the defendants' "positions and titles and not from any personal involvement in the incidents in question" and that "[t]here must be individual participation and involvement by the defendants"). In addition, even if the court inferred that Duncan and Juarez took some role in the layoff process, there are no allegations upon which one could reasonably infer that Duncan and Juarez were doing anything other than performing their jobs lawfully during the layoff process. Harris has not alleged that Duncan or Juarez in any way took part in the alleged plot to unlawfully terminate Harris' employment. The allegations of wrongdoing in the complaint point solely toward Slavin. Since Harris has not alleged any personal involvement on the part of Duncan or Juarez in the alleged constitutional deprivations, we grant Defendants' motion for summary judgment on the Section 1983 claims brought against Duncan and Juarez.

## II. Individual Capacity Section 1983 Claim Against Slavin

Defendants argue that the court should dismiss the individual capacity claim against Slavin because Harris has failed to specify that Slavin is being sued in her individual capacity. A plaintiff bringing a Section 1983 claim is required to "specify whether suit is brought against the defendant in his official capacity or in his individual capacity." *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991). If the

6

plaintiff fails to specify the capacity in which the defendant is being sued, the court must determine, after reading the complaint "in its entirety," what was intended by the plaintiff. *Id.* The Seventh Circuit has explained that a court should "ordinarily assume that [a defendant] has been sued in his official capacity and only in that capacity, . . .[and] [i]f a plaintiff intends to sue public officials in their individual capacities or in both their official and individual capacities . . . he should expressly state so in the complaint." *Kolar v. Sangamon County of State of Ill.*, 756 F.2d 564, 568-69 (7th Cir. 1985). In the instant action, Harris did not specify whether she is suing Slavin in her individual capacity, official capacity, or in both capacities. (Compl. 5-8). Harris alleges wrongdoing by Slavin in the performance of her official duties for the CPS. Harris' focus in the complaint is upon Slavin's alleged abuse of her official authority. Harris specifically alleges, for example, that Defendants acted "under color of state law." (Compl. Par. 17). Based on a reading of the complaint in its totality we conclude that Harris intended to sue Slavin solely in her official capacity. Harris complains that such a determination is premature but, as is indicated above, a plaintiff is obligated to plead the capacity in which a defendant is being sued and, in the absence of such a designation, the court must make this determination. Harris chose not to include any designation of the capacity for the claim against Slavin and thus Harris cannot now justly complain when the court makes this determination. Given this determination, there is no need to dismiss an individual capacity claim brought against Slavin as Defendants request

because, based on the court's determination, Harris did not bring an individual capacity claim against Slavin to begin with. Therefore, we deny Defendants' motion to dismiss the individual capacity claim against Slavin as moot.

## III. Section 1983 Claim against CPS

Defendants argue that the Section 1983 claim against CPS must be dismissed because Harris bases her claims against the CPS solely upon the doctrine of *respondeat superior*. The doctrine of *respondeat superior* cannot be utilized to hold local governmental units liable for Section 1983 violations. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A municipal governmental unit cannot be held liable under Section 1983 "unless the deprivation of constitutional rights is caused by a municipal policy or custom." *Kujawski v. Board of Comm'rs. Of Bartholomew County, Indiana*, 183 F.3d 734, 737 (7th Cir. 1999). A claim regarding a local governmental unit's unconstitutional policy, practice, or custom can be based upon: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice, that, although unauthorized, is so permanent and well-settled that it constitutes a 'custom or usage' with the force of law; or (3) an allegation that a person with final policymaking authority caused the injury." *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004).

We agree with Defendants that the complaint is totally devoid of any allegations referring to a practice, custom, or policy of the CPS that would have led

8

to the alleged constitutional deprivations. Neither are there facts alleged in the complaint that would justify an inference that such a practice, custom, or policy was responsible for the alleged constitutional deprivations. Harris' only argument in response to this issue is that "[i]t should go without saying that a Board of Education could not implement budget cut layoffs without adopting some policy that such layoffs should occur." (Ans. 7). Harris grasps at strained inferences and, conceding the deficiencies in her pleadings, argues that certain conclusions are "apparent" from the complaint. (Ans. 8). Harris thus acknowledges that she failed to provide any specific allegations to support a *Monell* claim and in the absence of such allegations, the court cannot engage on its own in idle speculation regarding what policies or practices might have been involved in the alleged constitutional deprivations. Therefore, we grant Defendants' motion to dismiss the Section 1983 claim against the CPS. In addition, since the remaining claims are state law claims and the notice of removal does not state that there is diversity jurisdiction we deem it prudent to dismiss the remaining state claims. *Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 300 (7th Cir.2003); *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir.1994); *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir.1994).

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion to dismiss the Section 1983 claims against Duncan and Juarez. We conclude that Harris did not bring an individual capacity Section 1983 claim against Slavin and thus deny Defendants' motion to dismiss such a claim as moot. We also grant Defendants' motion to dismiss the Section 1983 claim against the CPS. Finally, we dismiss the remaining state law claims.


Samuel Der-Yeghiayan
United States District Court Judge


Dated: November 2, 2005